FILED

2006 Nov-16  PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

KEITH ALLEN HENDERSON,

      Plaintiff,

v.                                   CASE NO.: CV-06-J-227-S

MIKE HALE, et al.,

      Defendants.

## <u>MEMORANDUM OPINION</u>

Pending before the court are defendants Mack Davis, Jodie Nelson, and Prison Health Services'("PHS") motion for summary judgment (doc. 49), brief in support of said motion and evidence (doc. 50), and defendant Dr. Sandral Hullett's motion for summary judgment and evidence in support of said motion[1] (doc. 51). The plaintiff filed a brief and evidence in opposition to defendant Hullett's motion[2] (docs. 56 and 57). No timely response to defendants Mack Davis, Jodie Nelson, and PHS' motion for summary judgment was received from the plaintiff. Having considered said motions, responses and replies, the court finds as follows:

---

[1]Defendants Hale and Costa were previously dismissed from this action. *See* Order of March 27, 2006 (doc. 19).

[2]Defendant Hullett's deadline for filing a reply to the plaintiff's response is November 17, 2006. However, having found that the plaintiff has failed to demonstrate any genuine issues of material fact remain in this case, the court deems the filing of said reply unnecessary.

## FACTUAL BACKGROUND

The plaintiff filed suit under 42 U.S.C. §1983 asserting violations of his Fifth and Eighth Amendment rights due to deliberate indifference to his medical needs (Counts Two, Three and Four).[3]  The plaintiff also states claims for negligence for failure to properly care for the plaintiff's health condition (Count One); negligent medical care (Count Five); and negligent administration of medication (Count Six).  Each of these claims is stated against all defendants, based on the plaintiff's medical condition while an inmate at the Jefferson  County jail.

In January 2004 plaintiff was a pretrial detainee at the Jefferson County jail. *See* Exhibit 2 (doc. 50-3).  Because of the plaintiff's severe and ongoing illegal drug use, he was placed on medication for detoxification purposes as well as due to schizophrenia.  *Id.*  These medications included Trazadone, which the plaintiff alleges caused an ongoing erection.  The first evidence of a complaint by the plaintiff is dated February 3, 2004, at 5:30 a.m., when he reported an ongoing erection to the nurse on duty and was given Motrin for pain.[4]  Plaintiff exhibit 1 (doc. 57-1).  A separate

---

[3]The plaintiff asserts in his amended complaint that he brings his claim under the "Fifth Ammendment (sic) to the United States Constitution" because "actions of all Defendants violated the Plaintiff's right to due process of law in that serve (sic) physical punishment was inflicted upon the person of the Plaintiff without the benefit of due process of law..."  Amended Complaint, at 6.

[4]This notation is signed "J. Jones, LPN."  Plaintiff exhibit 1.

notation in his medical record, also dated February 3, 2004, states that the plaintiff was prescribed ice and Tylenol #3 for pain, and records that the plaintiff stated he had had the erection for 28 hours.  Plaintiff exhibit 3 (doc. 57-3).  This record, which does not bear a time, is signed by defendant Hullett.  *Id*. See also affidavit of Hullett, defendant Exhibit A (doc. 52-2).  A third medical record from that same date is titled "Off-Site Health Care/Emergency Room Referral" and states that at 1:35 p.m., the plaintiff reported that the ice packs and Tylenol #3 did not provide any relief. Plaintiff exhibit2.  The referral to the emergency room was approved by Dr. Hullett at 1:30 p.m.  *Id*.  At the emergency room, the plaintiff underwent two surgeries in two days for treatment of priapism.  Plaintiff exhibit 5 (doc. 57-5), defendant exhibit 2 (doc. 50-3); affidavit of Hullett (doc. 52-2); defendant Exhibit C (doc. 52-4); defendant exhibit D (doc. 52-5).

Emergency room records from 3:00 p.m. on February 3, 2004, note that the plaintiff had a priapism for thirty-six hours at that time.[5]  Plaintiff exhibit 4. Operative records reflect that the plaintiff's condition was "probably secondary to use of Trazodone."  Plaintiff exhibit 5. They also reflect that the plaintiff "understands

---

[5]The plaintiff asserts that the plaintiff was not taken to the hospital until approximately 4 p.m. that day.  Plaintiff's brief in opposition to defendant Hullett's motion for summary judgment (doc. 56), at 2.  Plaintiff's exhibit 4 shows that the plaintiff was actually seen by a physician at the hospital at 1500 hours, or 3:00 p.m., leading the court to believe that the plaintiff arrived at the hospital prior to 3:00 p.m., on February 3, 2006.

that he may be rendered impotent from this problem since it had gone on so long before we were able to institute therapy." *Id*. He was discharged back to the Jefferson County jail on February 10, 2004. Defendant exhibits C and D (docs. 52-4 and 52-5). Further medical progress notes reflect that the plaintiff is "very depressed" because he was told he would never have an erection on his own. Plaintiff exhibit 6.

The plaintiff alleges that the delay in treatment caused his condition to render him impotent, and that his condition was a medical emergency which should have been treated as such. Amended complaint, ¶ 2. The plaintiff sues Sandral Hullett,[6] Jodie Nelson, a jail nurse, Mavis Davis, a jail nurse, and PHS, which provided medical care to inmates at the Jefferson County Jail pursuant to a contract that ended January 31, 2004. Affidavit of Rhea E. Garrett, II, submitted as defendant Exhibit 4 (doc. 50-5). No PHS employees provided care at the Jefferson County jail after that date. *Id.*

Defendant Mavis Davis is a registered nurse who was previously employed by PHS at the Jefferson County jail. Affidavit of Davis, ¶¶ 2-3, submitted as defendant exhibit 5 (doc. 50-6). After the PHS contract ended Davis become employed by the

---

[6]The plaintiff actually names "Sandra Hewlett, Medical Director Cooper Green Hospital" in his complaint and amended complaint (docs. 1 and 26). However, a motion to dismiss by defendant Hullett names this defendant as "Sandral Hullett" (doc. 30). Therefore, the court refers to this defendant as "Sandral Hullett."

4

Jefferson County Jail, but left shortly thereafter.  *Id*., at ¶¶ 5, 7.  Defendant Davis asserts she did not provide any care to the plaintiff during the relevant time period, that being the first week of February 2004, and she was not consulted about his care.  *Id*., at ¶ 6.  No evidence submitted by the plaintiff refutes this defendant's affidavit.

Defendant Jodie Nelson was a licensed practical nurse with PHS, and states that plaintiff received appropriate treatment.  Affidavit of Jodie Nelson, submitted as defendant exhibit 6 (doc. 50-7).  Upon conclusion of the contract, Jodie Nelson became employed by Jefferson County jail.  Defendant's brief, at 3, ¶ 9.

Defendant Hullett states the plaintiff's treatment met the medical standard of care.  Hullett affidavit (doc. 52-2).

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The Supreme Court has explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no

genuine issue as to any material fact, since the complete failure of proof
concerning an essential element of the non-moving party's case
necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party moving for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrates

the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to

the non-moving party to "go beyond the pleadings and by ... affidavits, or by the

'depositions, answers to interrogatories, and admissions on file' designate 'specific

facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324,

Fed.R.Civ.Pro. 56(e).  In meeting this burden the non-moving party "must do more

than simply show that there is a metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That

party must demonstrate that there is a "genuine issue for trial."  Fed.R.Civ.Pro. 56(c);

*Matsushita*, 475 U.S. at 587.  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986).  The basic issue before the court on a motion for summary judgment is

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson,* 477 U.S. at 251-52.

## III. LEGAL ANALYSIS

*A. Defendants Prison Health Systems and Mavis Davis*:

Based on the plaintiff's lack of evidence that these two defendants played any role in the plaintiff's medical care during the first week of February 2004, the court shall grant judgment in their favor and against the plaintiff on all claims, by separate order.   The court therefore considers the remaining claims as against only defendants Jodie Nelson and Dr. Sandral Hullett.

*B. Violation of § 1983* (Count Two):

42 U.S.C. § 1983 prohibits a person, acting under color of state law, from depriving another person of his or her rights secured by the United States Constitution. *See* 42 U.S.C. § 1983.  Section 1983 creates no substantive rights on its own, but merely provides a remedy for deprivation of federal constitutional rights. *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir.1996).  To prevail on a suit under § 1983, the plaintiff must show both a deprivation of federal rights and that said deprivation was by a person acting under color of state law.  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992).  Because § 1983, standing alone, creates no rights, the court shall dismiss Count Two of the plaintiff's complaint.

*C.  Violation of plaintiff's Fifth Amendment rights* (Count Three):

Because plaintiff was a pretrial detainee, any rights he has arise pursuant to the Fourteenth Amendment and not the Fifth.  Because the plaintiff does not allege any deprivation of his rights by federal actors, the Fifth Amendment protections do not apply to his claims.  The Fourteenth Amendment applies the rights of the Fifth Amendment to individuals whose rights are violated by a state.  Because the plaintiff has failed to state any claim upon which relief may be granted pursuant to the Fifth Amendment to the Constitution of the United States, judgment shall be granted in favor of the defendants and against the plaintiff on this count of the complaint. Additionally, as the plaintiff failed to address any Fifth Amendment claim in his response to defendant Hullett's motion for summary judgment, the court deems any possible claim under the Fifth Amendment to have been abandoned by the plaintiff. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.,* 325 F.3d 1274, 1284 (11th Cir.2003); *see also Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1322 (11th Cir.2001).

*D.  Violation of plaintiff's Eighth Amendment rights* (Count Four):

The plaintiff alleges that the defendants' deliberate indifference to plaintiff's need for medical care violated his Eighth Amendment rights.  As a pre-trial detainee, the plaintiff's rights actually exist under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment. *See City of Revere v. Massachusetts*

*Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).  However, the standards applied are the same.  *Id.*  "The standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." *Purcell ex rel. Estate of Morgan v. Toombs County, GA,* 400 F.3d 1313, 1318 n. 13 (11th Cir.2005)(quoting *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1024 n. 5 (11th Cir.2001).  *See also McDowell v. Brown,* 392 F.3d 1283, 1290 n. 8 (11th Cir.2004); *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994); *Hamm v. DeKalb County,* 774 F.2d 1567, 1574 (11th Cir.1985) (holding that "in regard to providing pretrial detainees with such basic necessities as ... medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.").  Therefore, the court will consider the plaintiff's claims for deliberate indifference to his need for medical care as if they had been brought pursuant to the Fourteenth Amendment.

The plaintiff asserts that Dr. Hullett "failed and or refused to treat his condition as a medical emergency."  Plaintiff's brief (doc. 56) at 3.  However, the first record of the plaintiff notifying jail medical personnel of his condition was at 5:30 a.m. on February 3, 2004.  At 1:30 p.m. that same day, the plaintiff was referred to the emergency room and no later than 3:00 p.m., the plaintiff was seen by a hospital physician.  During that time, the plaintiff was given ice and medication for pain.

Because that did not bring any relief of the plaintiff's symptoms, he was taken to the hospital.

A jail official violates the Fourteenth Amendment when he acts with deliberate indifference to the serious medical needs of a prisoner. *See Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (Eighth Amendment prohibition on cruel and unusual punishment violated when prison official acts with deliberate indifference to a prisoner's serious medical need); *see also Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1425 n. 6 (11th Cir.1997) (applying deliberate indifference standard to claim by pretrial detainee). Deliberate indifference includes both an objective and a subjective component. *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1186 (11th Cir.1994). The objective component is judged by contemporary standards of decency, while the subjective component requires proof of actual knowledge of the need for medical treatment and intentional refusal to provide it. *Id.*   When an official "knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate[,]" his actions amount to deliberate indifference.  *Id*., at 1186.  Thus, the plaintiff must establish both that an objectively serious medical need existed and that the defendants' response to that need amounted to deliberate indifference.  *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir.2003).  *See also Rogers v. Evans*, 792 F.2d 1052,

10

1058 (11th Cir.1986) ("deliberate indifference is medical treatment that is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'"); *Ancata v. Prison Health Services, Inc*., 769 F.2d 700, 704 (11th Cir.1985) (stating the standard as requiring knowledge of the need for medical care and an intentional refusal to provide that care).

   If there is no deliberate indifference, there can be no violation of a constitutional right and hence no § 1983 liability. *See e.g., Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir.2001). Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment. *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995) citing *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292.

   The court finds that the plaintiff has established that a serious medical need existed. Therefore, the court turns to the question of whether the plaintiff has provided any evidence of deliberate indifference to that need. To establish deliberate indifference, the plaintiff must show that each of the defendants had (1) subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999). See also *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir.2000) (stating

that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

The answer is no.  The plaintiff has provided the court no evidence that the response of defendant Nelson or defendant Hullett was inadequate.  To establish inadequacy, the plaintiff must put forth some evidence of what reasonable care for this type medical condition is.  *See e.g., Adams v. Poag*, 61 F.3d at 1543.  The plaintiff has not produced any such evidence.  Rather, the plaintiff relies solely on the notation in the surgical record that the plaintiff "understands that he may be rendered impotent from this problem since it had gone on so long before we were able to institute therapy."  Plaintiff exhibit 5.  The plaintiff provides no evidence of how quickly therapy should be implemented, nor evidence that the defendants' treatment was inadequate .  The first record of the plaintiff's medical condition before this court is dated February 3, 2004, at 5:30 a.m.  A hospital record at 3:00 p.m. that same date states that the plaintiff was "brought in from jail [with] priapism [times] 36 [hours]."  Plaintiff exhibit 4.  Simple math reflects that the plaintiff suffered from his medical condition for over 24 hours before  he sought any medical care at all.

The court is of the opinion that these facts simply do not show a deliberate failure or refusal to obtain medical treatment for the inmate.  The plaintiff sought treatment.  The defendants tried to treat the plaintiff conservatively.  When that failed,

the plaintiff was taken to the emergency room. The plaintiff's failure to produce opinions of medical experts explaining how this was "so grossly contrary to accepted medical practices as to amount to deliberate indifference," *Adams v. Poag*, 61 F.3d at 1543, amounts to a complete failure of proof concerning an essential element of his case, requiring summary judgment be granted to the defendants on this claim. *See Celotex Corp.*, 477 U.S. at 322-23.

E. *Negligence* (Count One):

Because the plaintiff failed to address this claim independently of the negligent medical care claim, the court finds it has been abandoned by the plaintiff and shall dismiss the same. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.,* 325 F.3d 1274, 1284 (11th Cir.2003); *see also Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1322 (11th Cir.2001).

F. *Negligent Medical Care* (Count Five):

Because PHS was no longer providing medical care at the Jefferson County jail as of February 2, 2004, this defendant could not have provided negligent medical care on or after that date. Similarly, because defendant Mavis Davis did not provide any care to the plaintiff during the relevant time period, and she was not consulted about his care, affidavit of Davis, ¶ 6, she could not have been negligent in providing care.

Assuming that defendants Hullett and Jodie Nielson did owe a duty to the

plaintiff not to provide negligent medical care, the plaintiff must also "prove, generally through expert testimony, that there was an applicable standard of care, that these defendants breached that standard, and that the breach was a proximate cause of plaintiff's injuries." *Lyons v. Walker Reg'l Med. Ctr.,* 791 So.2d 937 (Ala.2000). With regard to proximate cause, the Alabama Supreme Court has stated:

> A plaintiff in a medical-malpractice action must also present expert testimony establishing a causal connection between the defendant's act or omission constituting the alleged breach and the injury suffered by the plaintiff. *Pruitt v. Zeiger,* 590 So.2d 236, 238 (Ala.1991). *See also Bradley v. Miller,* 878 So.2d 262, 266 (Ala.2003); *University of Alabama Health Servs. Found., P.C. v. Bush,* 638 So.2d 794, 802 (Ala.1994); and *Bradford v. McGee,* 534 So.2d 1076, 1079 (Ala.1988). To prove causation in a medical-malpractice action, the plaintiff must demonstrate '"that the alleged negligence probably caused, rather than only possibly caused, the plaintiff's injury." ' *Bradley,* 878 So.2d at 266 (quoting *University of Alabama Health Servs.,* 638 So.2d at 802). *See also DCH Healthcare Auth. v. Duckworth,* 883 So.2d 1214, 1217 (Ala.2003) ... and *Pendarvis v. Pennington,* 521 So.2d 969, 970 (Ala.1988)('"The rule in medical malpractice cases is that to find liability, there must be more than a mere possibility among others that the negligence complained of caused the injury; there must be evidence that the negligence probably caused the injury."' (quoting *Williams v. Bhoopathi,* 474 So.2d 690, 691 (Ala.1985), and citing *Baker v. Chastain,* 389 So.2d 932 (Ala.1980)))."

*Patton v. Thompson*, — So.2d, — , — , 2006 WL 3239968 *8-9 (Ala.2006). In other words, the plaintiff must establish that any delay in taking him to the emergency room probably resulted in his impotence.[7]

To meet this burden, "the plaintiff ordinarily is required to present expert testimony as to the relevant standard of care." *Martin v. Dyas,* 896 So.2d 436, 441 (Ala.2004). The only exceptions to the requirement of expert testimony are: "in a case where want of skill or lack of care is so apparent ⋯ as to be understood by a layman, and requires only common knowledge and experience to understand it.'" *Tuscaloosa Orthopedic Appliance Co., Inc., v. Wyatt*, 460 So.2d 156, 161 (Ala.1984) (quoting *Dimoff v. Maitre,* 432 So.2d 1225, 1226-27 (Ala.1983)). The Alabama Supreme Court has recognized the following situations as falling within this exception: "1) where a foreign instrumentality is found in the plaintiff's body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct." *Allred v. Shirley,* 598 So.2d 1347, 1350 (Ala.1992)(citations omitted).

---

[7]The court notes that the plaintiff has not provided any evidence of ongoing impotence.

The plaintiff has failed to establish that any of these exceptions apply to the facts before this court.  No evidence of the proper care for a priapism, other than the care this plaintiff received, has been placed before this court.  The plaintiff argues that:

> Henderson's serious medical condition was so obvious that many lay persons realized that he required the medical attention that he repeatedly begged for.  The Public at large is aware through ads for Viagra, Celasis (sic), and the like which state that any erection lasting longer than four hours should be treated as an emergency.

Plaintiff's brief (doc. 56) at 5.   However, the plaintiff has presented no evidence of (1) many lay persons realizing that he required medical attention; (2) that he repeatedly begged for medical attention; (3) of "what the public at large" is aware; and (4) what the advertisement referenced actually states.  In other words, plaintiff's argument simply is not evidence.

The plaintiff also asserts that Dr. George Adams, whose name appears as the surgeon who operated on the plaintiff, is an expert in this matter.  The plaintiff apparently does not understand the term "expert witness."  The court shall not engage in a dissertation of how to designate an expert witness as such, but finds sufficient to state that the plaintiff has designated no expert witness to date.

16

*G. Negligent Administration of Medication* (Count Six):

Although not set forth by the plaintiff, the court assumes that the plaintiff is trying to state a claim based on his being given the drug Trazodone.  The court is of the opinion that this count of the complaint is another claim for medical malpractice, requiring the same burden of proof regarding the standard of care for prescribing this medication.  As no party has addressed this claim independently of the negligent medical care claim, the court finds it has been abandoned by the plaintiff and shall dismiss the same. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.,* 325 F.3d 1274, 1284 (11th Cir.2003); *see also Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1322 (11th Cir.2001).

Having considered the foregoing, and finding that the defendants' motions for summary judgment are due to be granted on all counts of the complaint and amended complaint, the court shall so rule by separate order.

**DONE** this the 16th day of November, 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

17